IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| EILEEN LAMBERT,<br><br>Petitioner,<br><br>vs.<br><br>FORT PECK ASSINIBOINE & SIOUX TRIBES,<br><br>Respondents. | CV 15-82-GF-BMM-JTJ<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

On September 21, 2015, Eileen Lambert filed a petition seeking a writ of habeas corpus under 25 U.S.C. § 1301, et. seq., the Indian Civil Rights Act (ICRA). (Doc. 1). Lambert is a tribal prisoner proceeding pro se.

On September 23, 2015, the undersigned ordered Lambert to show what steps had she had taken to exhaust her claims within the tribal court system. (Doc. 2). Lambert timely responded. (Doc. 3). This matter is ready for adjudication.

**I.     Background**

The Court set forth a general background of this case in its Order to Petitioner to Show Cause. (Doc. 2). Lambert's Response to the Order (Doc. 3) sheds some additional light on her overall plight, but the precise question of what steps Lambert has undertaken to exhaust tribal remedies remains unanswered.

Additionally, while Lambert was initially incarcerated in the Adult Correctional Facility in Poplar, Montana, it appears she may have been released from custody. *See,* Not. (Doc. 4).

In her Response to the Order to Show Cause (Doc. 3), Lambert references complaints against the Fort Peck Assiniboine & Sioux Tribes (hereinafter "the Tribes") and their officers she filed while incarcerated, but she does not explain the nature or number of complaints. (Doc. 3 at 1). Presumably, the complaints reference the purported violation of Lambert's rights outlined under ICRA. Lambert states that the Tribes have not responded to her complaints. *Id*. Importantly, Lambert notes that the crimes alleged against her are "still just allegations due to the fact there has been no trial by jury to determine whether there was a violation of any law or that Lambert committed any crime." *Id*. at 2.

It appears that as a result of the criminal proceedings against Lambert, a civil family law matter has been initiated wherein the Tribes are attempting to place Lambert's daughter in a temporary protective setting. *See*, *Id*. at 3-5. Lambert claims, in effect, that her child is being used to leverage a criminal conviction against her. *Id*. at 5. The current status of the family law matter and the steps Lambert has undertaken to fight the removal remain unclear from her petition.

**II.    Analysis**

25 U.S.C. § 1303 authorizes any person "detained" by an order of an Indian

Tribe to test the validity of that detention in the federal courts by way of a writ of habeas corpus. Lambert argues that for purposes of her habeas petition, she is "detained" under the meaning of 25 U.S.C. § 1303. The undersigned agrees. (Doc. 2 at 3). Lambert then argues that this Court is attempting to improperly impose non-habeas exhaustion requirements upon her and that absolute exhaustion should not be required in order for this court to entertain her pretrial habeas petition. (Doc. 3 at 8).

Lambert is correct that under certain narrow circumstances, courts have considered pretrial habeas petitions. *Means v. Northern Cheyenne Tribal Court*, 154 F. 3d 941, 949 (1998) (rev'd on other grounds, *United States v. Enas*, 255 F. 3d 662 (9th Cir. 2001)). Means, a non-member Indian, attempted to raise a jurisdictional challenge to his prosecution by the Northern Cheyenne. The tribes conceded that a pretrial habeas petition could be reviewed under "special circumstances" but argued that Means had not demonstrated such circumstances. *Means*, 154 F. 3d at 949, citing *Carden v. Montana*, 626 F. 2d 82, 83 (9th Cir. 1980). While the Circuit affirmed the district court's exercise of jurisdiction over Means's pretrial habeas petition, it also observed that in relation to exhaustion, Means had, in fact, presented his jurisdictional argument to both the Tribal Court and the Northern Cheyenne Court of Appeals, both of which denied his claim, prior to his filing in federal court. *Id*. Noting that Means met the exhaustion

requirement, the Circuit reaffirmed that the purpose of exhaustion is "to promote 'tribal self-government and self-determination' by allowing tribal courts to 'have the first opportunity to evaluate the factual and legal bases for the challenge to [their] jurisdiction.' " *Id.*, citing *Iowa Mutual Ins. Co. v. LaPlante*, 480 U.S. 9, 15-16 (1987). Thus, despite Lambert's protestations to the contrary, the Supreme Court's rationale that a federal court should not entertain tribal court challenges until a petitioner has exhausted the remedies available in tribal court does apply in the context of habeas petition filed pursuant to ICRA.

Lambert cites *Selam v. Warm Springs Tribal Correctional Facility*, 134 F. 3d 948 (1998), for the premise that exhaustion is not a rigid requirement, but rather a flexible one. (Doc. 3 at 8). There the Court examined Selam's case and found Selam failed to show that exhaustion would be futile or that the tribal court of appeals offered no adequate remedy. *Selam*, 134 F. 3d at 954. In this case, it would be premature for Lambert to attempt to make such a showing, much less for this Court to attempt to make such a finding. By her own admission, Lambert has not yet even proceeded to trial.

Moreover, in *Selam* the Ninth Circuit explained:

> The Supreme Court's policy of nurturing tribal self-government strongly discourages federal courts from assuming jurisdiction over unexhausted claims. Additionally, [a] federal court's exercise of jurisdiction over matters relating to reservation affairs can . . . impair the authority of tribal courts. Considerations of comity, along with the desire to avoid procedural nightmares, have prompted the

4

> Supreme Court to insist that the federal court stay[ ] its hand until after the Tribal Court has had a full opportunity . . . to rectify any errors it may have made. The Supreme Court specifically has instructed us to require exhaustion of tribal appellate court remedies in situations like this one because [t]he federal policy of promoting tribal self-government encompasses the development of the entire tribal court system, including appellate courts.

*Selam*, 134 F.3d at 953 (internal citations and quotation marks omitted).

Examination of Lambert's claims should first be conducted by the tribal court. The policy of tribal self-government supports this determination. The record before the Court, including Lambert's Response to the Order to Show Cause, indicates that Lambert has not exhausted her tribal remedies. Thus, this Court should stay its hand until the tribal court has had a full opportunity to exercise its jurisdiction over Lambert's claims. *Strate v. A-1 Contractors*, 520 U.S. 438, 449 (1997). Additionally, a writ of habeas corpus is not available to test the validity of a child custody decree issued by a tribal court. *Weatherwax ex rel. Carlson v. Fairbanks*, 619 F. Supp. 294, 296 (D. Mont. 1985).

### III. Certificate of Appealability

A certificate of appealability does not appear to be required in this matter. *See generally*, 28 U.S.C. § 2253. To the extent that one is required, it is denied for the reasons contained herein.

Based on the foregoing, the Court enters the following:

### RECOMMENDATIONS

1. Ms. Lambert's petition (Doc. 1) should be **DISMISSED** for failure to exhaust tribal remedies.

2. The Clerk of Court should be directed to enter, by separate document, a judgment of dismissal.

**NOTICE OF RIGHT TO OBJECT
TO FINDINGS & RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

Ms. Lambert may object to this Findings and Recommendation within 14 days.[1] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Ms. Lambert must immediately notify the Court of any change in her mailing address</u> by filing a "Notice of Change of Address." Failure to do so may result in dismissal of this action without notice to her.

DATED this 11th day of January, 2016.

/s/ John Johnston
John Johnston
United States Magistrate Judge

---

[1] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.